UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

WILLIAM E. BARONI, JR.,

      Plaintiff,

  -v-                                                     No.   21-CV-5961-LTS

THE PORT AUTHORITY OF NEW YORK
AND NEW JERSEY,

      Defendant.

-------------------------------------------------------x

MEMORANDUM ORDER

      Plaintiff, William E. Baroni, Jr. ("Plaintiff" or "Mr. Baroni") brought this action against the Port Authority of New York and New Jersey ("Defendant" or "the Port Authority") in 2021, seeking indemnification for attorney's fees and costs that he incurred in the course of his defense against criminal charges relating to conduct he undertook while employed by the Port Authority. (See docket entry no. 1-1 ("Compl." or the "Complaint").) The Court granted Defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, citing Mr. Baroni's failure to demonstrate that he had given timely notice as required to trigger the Port Authority's waiver of sovereign immunity. (Docket entry no. 26.) Mr. Baroni now seeks, pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), alteration of and relief from the judgment to permit him to amend

his Complaint pursuant Federal Rule of Civil Procedure 15.  (See docket entry no. 29 (the "Motion")); see also docket entry no. 30-1 ("Proposed Amended Complaint" or "PAC").)

The Court has carefully reviewed all of the parties' submissions in connection with the Motion.  For the following reasons, Plaintiff's Motion is denied.

BACKGROUND

Events Leading Up to the Lawsuit

The following facts, drawn from the Proposed Amended Complaint and its attachments, are taken as true for the purposes of the instant motion practice.

The Port Authority is a bi-state agency, maintained by the states of New York and New Jersey, which operates several transportation facilities in both states, including bridges, tunnels, and roadways.  (PAC ¶ 9.)  Mr. Baroni was appointed to be the Deputy Director of the Port Authority by then-New Jersey Governor Christopher J. Christie in or about February 2010 and served in such role from March 1, 2010, until December 13, 2013.  (Id. ¶¶ 8, 14.)  As Deputy Director, Mr. Baroni was responsible for the "general supervision of all aspects of the Port Authority's business" including the operation of the Port Authority's transportation facilities.  (Id. ¶ 15.)  The transportation facility relevant to this dispute is the George Washington Bridge, which connects Manhattan, New York, with Fort Lee, New Jersey.  (Id.)

Normal procedure dictated that, each weekday morning, three of the twelve approach lanes from New Jersey to the upper deck of the George Washington Bridge were set aside, through the use of traffic cones, to provide "exclusive, special access to drivers" approaching the bridge from Fort Lee, New Jersey.  (PAC ¶ 16.)  The other nine lanes were shared by cars approaching "from various feeder highways" leading to the George Washington

Bridge. (Id.) In September 2013, Mr. Baroni approved a subordinate's direction that the traffic cones historically used to set aside three lanes for Fort Lee drivers be moved two lanes further to the right. (Id. ¶ 17.) Fort Lee drivers were thus provided with only one special access lane, instead of three, creating a "bottleneck" and "caus[ing] traffic to back up into the town, creating severe traffic." (Id.) The decision to eliminate two of Fort Lee's special access lanes was reversed "[l]ess than a week after the realignment was put into place" and the "prior traffic pattern was reestablished." (Id.)

Soon afterward, the media reported that Mr. Baroni and others had decided to reallocate the special access lanes in order to punish Fort Lee's Democratic mayor, who had refused to endorse Governor Christie in his bid for reelection. (PAC ¶ 18.) The United States Attorney's Office for the District of New Jersey investigated the allegations and sought criminal charges. A grand jury indicted Mr. Baroni, on or about April 23, 2015, on nine counts of fraud, conspiracy to commit fraud, deprivation of civil rights, and conspiracy to commit deprivation of civil rights. (Id. ¶ 25.) At trial, Mr. Baroni was convicted on all counts. (Id. ¶ 28.) Subsequently, Mr. Baroni appealed his criminal convictions, and the United States Court of Appeals for the Third Circuit reversed his convictions on the civil rights charges but affirmed his convictions on the fraud charges. (Id. ¶ 30.) Mr. Baroni continued to challenge his fraud convictions before the United States Supreme Court, which reversed the Third Circuit's judgment affirming those convictions. (Id. ¶¶ 31-33.)

In Kelly v. United States, 140 S. Ct. 1565 (2020), a copy of which Mr. Baroni attached to the Proposed Amended Complaint, the Supreme Court explained that, while Mr. Baroni "used deception to reduce Fort Lee's access lanes to the George Washington Bridge—and thereby jeopardized the safety of the town's residents" for "no reason other than political

payback," he "could not have violated the federal-program fraud or wire fraud laws" because his scheme "did not aim to obtain money or property." Id. at 1574. The Supreme Court reasoned that Mr. Baroni's conduct amounted to a "regulatory decision about the toll plaza's use—in effect, about which drivers had a 'license' to use which lanes" and, because the "exercise of regulatory power cannot count as the taking of property," his convictions for fraud could not stand. Id. at 1573. On remand, the judgment of conviction against Mr. Baroni was vacated and the indictment was dismissed. (PAC ¶ 36; id., Ex. B.)

Mr. Baroni's Initial Complaint and the Motion to Dismiss

In his initial Complaint, Mr. Baroni sought indemnification from the Port Authority for the defense costs "incurred by him and on his behalf in successfully defending against the criminal charges." (Compl. ¶ 28.) Plaintiff relied on Article XI of the Port Authority's by-laws, which he attached to the Complaint, in asserting that he has a right to such indemnification. (Id., Ex. C (the "By-Laws").) Article XI of the By-Laws includes provisions regarding "Defense and Indemnification of Individuals[.]" Paragraph 7 thereof provides that:

> The Port Authority may, consistent with applicable law, provide for a defense when punitive damages are sought or criminal charges are asserted in connection with any alleged act or omission which occurred or is alleged in the complaint to have occurred while the individual was acting within the scope of Port Authority employment or duties, based upon an investigation and review of the facts and circumstances and a determination by General Counsel that provision of such defense would be in the best interest of the Port Authority; **provided, however, that the Port Authority shall provide reimbursement of defense costs incurred by or on behalf of an indemnified party in defense of a criminal proceeding arising out of such an act or omission, upon acquittal or dismissal of the criminal charges** . . . .

(By-Laws, Art. XI ¶ 7 (emphasis added).)  Paragraph 1 of Article XI defines an "indemnified party" as "an individual who is a Commissioner, officer, or employee of the Port Authority." (Compl. ¶ 31 (quoting By-Laws, Art. XI ¶ 1).)

Plaintiff asserted that he is entitled to indemnification because he served as the former Deputy Executive Director of the Port Authority and successfully defended himself against prosecution "for actions taken in the scope of his Port Authority employment." (Compl. ¶ 32.)  After Plaintiff requested reimbursement of the costs incurred in his defense from the Port Authority in September 2020, the Port Authority denied the claim.  (Id. ¶¶ 35-36.)  In response, Mr. Baroni served a notice of claim on the Port Authority on March 5, 2021, as required by the relevant provisions of the N.Y. Unconsolidated Laws (id. ¶ 38), and filed suit in June 2021, asserting claims for indemnification, breach of contract, promissory estoppel, and "deprivation of property without due process of law."  (See generally Compl.)  The allegations underlying the four counts are all nearly identical, stemming from the Port Authority's failure to indemnify Mr. Baroni pursuant to Article XI of the By-Laws.

The Court granted the Port Authority's motion to dismiss the Complaint for lack of subject matter jurisdiction after finding that the Port Authority had not waived its sovereign immunity.  (Docket entry no. 26 at 12.)  The Court first observed that the Port Authority has, by statute, waived its sovereign immunity only for claims filed "after" they have accrued.  (Id. at 8-9 (citing N.Y. Unconsol. Laws section 7107 and N.J. Stat. Ann. section 32:1-163).)  The Court went on to conclude that Mr. Baroni failed to plead that he had provided the requisite notice to the Port Authority pursuant to the By-Laws of his demand for indemnification in a timely fashion, so no claim had accrued for purposes of the statutory waiver of the Port Authority's sovereign immunity.  (Id. at 11-12.)  The Court relied on Paragraph 8 of Article XI of the By-

Laws as establishing material notice and timing requirements in connection with the accrual of indemnification claims. Paragraph 8 provides in pertinent part that:

> The benefits of this Article XI shall be conditioned upon (i) delivery to General Counsel of the original or a copy of any summons, complaint, process, notice, demand or pleading within five days after receipt or service of such document, such delivery being deemed a request by the party seeking indemnification that the Port Authority provide for defense pursuant to this Article XI; (ii) the full cooperation of the indemnified party in the defense . . . ; and (iii) the agreement of the indemnified party that the Port Authority shall be entitled to withdraw such defense and demand reimbursement from such party for costs . . . .

(By-Laws, Art. XI ¶ 8.) The Court considered two arguments, based on the requirements of Paragraph 8, that the Port Authority's sovereign immunity had not been waived with respect to Mr. Baroni's claim: Mr. Baroni had not provided timely notice of his request for mandatory reimbursement by delivering to the Port Authority (1) a copy of the judgment of acquittal or even (2) a copy of the indictment at the initiation of the prosecution. (Docket Entry no. 26 at 11-12.) In other words, because Mr. Baroni did not plausibly allege that he had satisfied the requirements of the By-Laws by following either path, the Court concluded that the Port Authority's sovereign immunity was still intact, and the Court lacked jurisdiction to hear Mr. Baroni's claims. (Id. at 12.) Because there was no proffer that either requirement had been met, the Court did not explain whether satisfaction of either requirement—delivering a copy of the judgment of acquittal or a copy of the indictment—was necessary or sufficient to establish the Port Authority's waiver of sovereign immunity with respect to Mr. Baroni's claim of entitlement to mandatory reimbursement of his defense costs by reason of his acquittal.

Mr. Baroni's Proposed Amended Complaint

After the Court issued its order and entered judgment, Mr. Baroni informed the Port Authority of his intention to seek leave to amend his Complaint. (See docket Entry no. 31

("Pl. Mem.") at 10.)  The Port Authority did not consent to the amendment.  (See docket entry no. 34 ("Def. Mem.") at 6.)

Mr. Baroni argues that his Proposed Amended Complaint resolves the pleading deficiency that the Court identified in its order granting the motion to dismiss.  He asserts that, "[a]lthough the Court held in the instant case that there is a deficiency in Mr. Baroni's complaint—specifically, the absence of an allegation of either 'timely delivery of the judgment of acquittal' or 'timely delivery of the indictment,'—it is a mere pleading deficiency."  (Id. at 12 (quoting Docket Entry no. 26 at 12).)  Mr. Baroni points to three new allegations in the Proposed Amended Complaint that, he argues, "resolve the deficiency": (1) "delivery to the Port Authority's General Counsel of a copy of Mr. Baroni's indictment . . . was made within five days of its issuance"; (2) "Mr. Baroni repeatedly requested at the outset of the federal investigation that the Port Authority indemnify him and pay the cost of his defense"; and (3) "the Port Authority instructed Mr. Baroni that his requests were sufficient and that he need not, and indeed should not, make any further requests."  (Id.)   In other words, Mr. Baroni argues that these three allegations, taken as true, demonstrate that he complied with the By-Laws and thereby satisfied the condition precedent to the Port Authority's waiver of sovereign immunity.  (See id.)  This argument relies on the assumption that Mr. Baroni's timely delivery of the indictment and requests for indemnification at the outset of the prosecution were sufficient to meet the requirements of the By-Laws.  The Port Authority, in contrast, contends that the proposed amendments are insufficient because they do not show timely delivery of the

judgment of acquittal, the document upon which his request pursuant to the mandatory provision is predicated. (See Def. Mem. at 12-13.)

After the Motion had been fully briefed, Mr. Baroni filed a letter informing the Court that the state of New Jersey had agreed to reimburse Bridget Anne Kelly, Mr. Baroni's co-defendant in the criminal case, for her legal expenses. (Docket entry no. 36.) Mr. Baroni argued that "New Jersey's agreement to pay Ms. Kelly's legal fees here supports Mr. Baroni's position that a public official who is wrongly prosecuted for non-criminal conduct is entitled to reimbursement of legal fees" and thus supports his pending Motion to Amend. (Id. at 1.)

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend a complaint] when justice so requires." Rule 15 is a "permissive standard," Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC, 797 F.3d 160, 190 (2d Cir. 2015), and "[o]rdinarily, a plaintiff should be granted leave to amend at least once after having the benefit of a court's reasoning in dismissing the complaint," United States ex rel. Hart v. McKesson Corp., 602 F. Supp. 3d 575, 598 (S.D.N.Y. 2022) (quoting Obra Pia Ltd. v. Seagrape Inv'rs LLC, 19-CV-7840-RA, 2021 WL 1978545, at *3 (S.D.N.Y. May 18, 2021)). But where, as here, the moving party "has waited until after judgment before requesting leave, a court may exercise its discretion [to grant leave to amend] more exactingly." Williams v. Citigroup Inc., 659 F.3d 208, 213 (2d Cir. 2011) (citation omitted). In this circumstance, the Court can deny leave to amend if amendment is "unlikely to be productive" to the extent that

the amendment is "futile" and "could not withstand a motion to dismiss." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted).

Under Federal Rule of Civil Procedure 12(b)(1), a complaint cannot survive a motion to dismiss for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Plaintiff has the burden of proving by a preponderance of the evidence that jurisdiction exists. See id. Although the Court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, . . . jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks and citations omitted); see also Newsom-Lang v. Warren Int'l, 129 F. Supp. 2d 662, 663 (S.D.N.Y. 2001); Saleh v. Ridge, 367 F. Supp. 2d 508, 511 (S.D.N.Y. 2005).

The Port Authority is "a bi-state agency created through a compact between New Jersey and New York with the approval of Congress." Kyne v. Carl Beiber Bus Servs., 147 F. Supp.2d 215, 218 (S.D.N.Y. 2001). Although the Port Authority originally "enjoyed complete sovereign immunity from suits of any sort," Korean Air Lines Co. v. Port Auth. of N.Y. & N.J., No. 10–CV–2484-SLT-JO, 2013 WL 394704 at *2 (E.D.N.Y. Jan. 31, 2013) (citation omitted), in 1950, New York and New Jersey enacted legislation "allowing suit against the Port Authority so long as the plaintiff complied with [certain] jurisdictional prerequisites." Kyne, 147 F. Supp. 2d at 218; see also N.J.S.A. § 32:1-163; N.Y. Unconsol. Law § 7107. New York and New Jersey's identical statutes require "a sixty-day notice of claim and commencement of suit within one year from the date of the accrual of the cause of action." Caceres v. Port Auth. of N.Y. &

N.J., 631 F.3d 620, 624 (2d Cir. 2011) (citing statutes).  These requirements are jurisdictional, and failure to satisfy them "will result in withdrawal of defendant's consent to suit and compels the dismissal of the action for lack of subject matter jurisdiction." Id. (quoting Lyons v. Port Auth. of N.Y. & N.J., 643 N.Y.S.2d 571, 571-52 (1st Dep't 1996)).

As the Court reasoned in its order granting the Port Authority's motion to dismiss, the notice of claim statute provides that the "Port Authority's waiver of sovereign immunity only applies to claims that have accrued, . . . and a cause of action for breach of contract accrues once the conditions precedent to filing suit have been satisfied."  (Docket entry no. 26 at 11 (emphasis added) (citations and quotation marks omitted)).  That is because "[i]n contract cases, the cause of action accrues and the Statute of Limitations begins to run from the time of the breach.  And, as a general rule, when the right to final payment is subject to a condition, the obligation to pay arises and the cause of action accrues, only when the condition has been fulfilled." John J. Kassner & Co. v. City of New York, 46 N.Y.2d 544, 550 (1979) (citation omitted); see also Deutsche Bank Nat'l Tr. Co. v. Flagstar Cap. Mkts., 32 N.Y.3d 139, 149 (2018) ("A substantive condition precedent impacts accrual of a breach of contract cause of action because no obligation to perform arises and no breach therefore occurs until the 'condition has been fulfilled.'") (citation omitted).  Whether Mr. Baroni satisfied the condition precedent to the Port Authority's contractual obligation to reimburse his defense costs, therefore, determines whether or not the Port Authority has waived its sovereign immunity in this case.

As noted above, Mr. Baroni argues that three new allegations in his Proposed Amended Complaint resolve the deficiency that the Court identified in its order granting the motion to dismiss.  He also references the State of New Jersey's decision to reimburse Ms.

Kelly for her legal fees. Because none of the allegations demonstrates that Mr. Baroni satisfied the condition precedent to the accrual of his claims, however, the Proposed Amended Complaint does not plausibly allege that the Port Authority waived its sovereign immunity in this case. The Proposed Amended Complaint, therefore, could not survive a motion to dismiss and does not warrant the relief Mr. Baroni seeks. Mr. Baroni's failure to allege that he timely delivered the judgment of acquittal to the Port Authority renders his proposed amendment to his complaint futile.

<u>First</u>, in its order granting the motion to dismiss, the Court explained:

> Plaintiff has not alleged, nor demonstrated, that he fulfilled the condition precedent to the Port Authority's contractual obligation to reimburse his defense costs under either the Port Authority's interpretation of the By-Laws—requiring timely delivery of the judgment of acquittal—or his own—requiring timely delivery of the indictment, as the document initiating the dispute. Without such showing, Plaintiff cannot demonstrate that his cause of action has accrued or, consequently, that the Port Authority has waived its sovereign immunity in this case.

(Docket Entry no. 26 at 11-12.) The Court did not, at that time, determine which path—providing a copy of the indictment or the judgment of acquittal—was dispositive.

Now, the Court concludes that Plaintiff's cause of action could have only accrued if he had timely delivered the document on which his claim to entitlement to an award of attorney's fees is based—the judgment of acquittal. Indeed, the Proposed Amended Complaint alleges that, "[u]pon the District Court's dismissal of charges against him, Mr. Baroni became entitled under the Port Authority's By-Laws to reimbursement by the Port Authority of the defense costs incurred by him and on his behalf in successfully defending against the criminal charges." (PAC ¶ 37 (emphasis added)).[1] Mr. Baroni thus recognizes that

---

[1] The Proposed Amended Complaint alleges that the District Court's dismissal of charges against Mr. Baroni entitled him to reimbursement by the Port Authority for legal fees associated with his defense. (PAC ¶ 37.) However, Mr. Baroni does not argue that his

he was not entitled to seek mandatory reimbursement until over five years <u>after</u> the indictment was allegedly delivered to and reviewed by the Port Authority.  (<u>Compare</u> <u>id.</u> ¶ 25 (indictment issued on April 23, 2015) <u>with</u> <u>id.</u> ¶ 36 (order vacating the judgment of conviction against Mr. Baroni issued on June 11, 2020).)  Delivery of the indictment, simply put, could not have possibly put the Port Authority on notice that Mr. Baroni could be entitled to indemnification under Paragraph 7 of Article XI of the By-Laws.  (<u>See</u> Def. Mem. at 13.)  It was for this reason that the Court determined that "the judgment of acquittal serves as the critical notice on which Plaintiff's demand for indemnification is based."  (<u>See</u> Docket entry no. 26 at 10.)  It is also for this reason that the Proposed Amended Complaint's new allegation that the Port Authority had received the indictment within five days of its issuance is "futile" insofar as it seeks to demonstrate that the timely notice requirement of the By-Laws was satisfied.[2]  <u>See</u> <u>Lucente</u>, 310 F.3d at 258.

<blockquote>Second, Mr. Baroni's allegation that he made a number of indemnification requests prior to his acquittal, including his delivery of a subpoena from the New Jersey Legislature in December 2013 and his "repeated[]" "explicit request[s]" for indemnification (Pl. Mem. at 18), is unavailing for similar reasons.  The Proposed Amended Complaint contains</blockquote>

---

claim accrued upon the acquittal.  Nor could he: the By-Laws condition the benefits of Article XI upon "delivery to General Counsel of the original or a copy of any summons, complaint, process, notice, demand or pleading within five days after receipt or service of such document, such delivery being deemed a request by the party seeking indemnification that the Port Authority provide for defense pursuant to this Article XI" (By-Laws, Art. XI ¶ 8), and a cause of action for breach of contract does not accrue until all conditions precedent have been satisfied (<u>see, e.g.</u> <u>Deutsche</u> Bank, 32 N.Y.3d at 149).

[2]   Because the Court finds that Mr. Baroni's allegation that the indictment had been delivered to the Port Authority is insufficient to warrant leave to amend his Complaint, it declines to address the Port Authority's argument that "Paragraph 8 of Article XI of the By-Laws plainly requires the 'party seeking indemnification' to deliver the requested notice to the Port Authority" personally.  (Def.'s Mem. at 13.)

numerous allegations describing Mr. Baroni's requests for indemnification while the investigation and prosecution against him were ongoing. (See PAC ¶¶ 20-23). Given the timing of the alleged requests—prior to the dismissal of charges against Mr. Baroni—there is no dispute that each of the alleged requests was made pursuant to the permissive provision of Paragraph 7 of Article XI of the By-Laws, which provides that "[t]he Port Authority <u>may</u> . . . provide for a defense" of an eligible Port Authority employee "based upon an investigation and review of the facts and circumstances and a determination by General Counsel that provision of such defense would be in the best interest of the Port Authority." (<u>See</u> By-Laws, Art XI ¶ 7 (emphasis added)). Nowhere does the Proposed Amended Complaint allege that a timely request for indemnification was made <u>after</u> the District Court's dismissal of the charges against Mr. Baroni[3]—the event that Mr. Baroni proffers as the source of his entitlement to reimbursement of his defense costs under the mandatory provision of Paragraph 7 of Article XI of the By-Laws, which provides that "the Port Authority <u>shall</u> provide reimbursement of defense costs incurred by or on behalf of an indemnified party in defense of a criminal proceeding arising out of such an act or omission, <u>upon acquittal or dismissal of the criminal charges</u>." (<u>See id.</u> (emphasis added)). The timing of Mr. Baroni's requests for indemnification, regardless of whether they took the form of the delivery of a document or an explicit request, also renders Mr. Baroni's additional argument invoking the substantial compliance doctrine

---

[3]   The Proposed Amended Complaint alleges that Mr. Baroni "sent a letter to the Port Authority making a claim under Article XI of the By-Laws for reimbursement of the costs incurred in the course of the work performed by all of the attorneys" on September 25, 2020 (PAC ¶ 46), several months after the District Court dismissed the charges against him on June 11, 2020 (<u>id.</u> ¶ 36). Nowhere does the Proposed Amended Complaint allege that Mr. Baroni made his request for reimbursement "within five days" of receiving the judgment of acquittal as required by the By-Laws. (By-Laws, Art. XI ¶ 8.)

unavailing.[4]  (See Pl.'s Mem. at 19-20.)  Because the Proposed Amended Complaint does not address the relevant provision of Paragraph 7, the new allegations do not cure the deficiency in Mr. Baroni's initial complaint and are thus "futile."  See Lucente, 310 F.3d at 258.

Third, the Port Authority could not have "waived" the By-Law requirements; nor is the Port Authority estopped from arguing that Mr. Baroni failed to comply with the requirements.  Mr. Baroni asserts that "[t]he General Counsel's statement to Mr. Baroni's counsel that Mr. Baroni's repeated efforts to request indemnity were sufficient and that Mr. Baroni should stop making them acts as a waiver of any condition precedent under Article XI, Section 8 of the By-Laws, and it also estops the Port Authority from arguing that Mr. Baroni did not comply with the requirements of the section."  (Pl. Mem. at 21.)  This argument, however, again ignores the timing of Mr. Baroni's initial requests for indemnification.

The nonoccurrence of "an express condition precedent[] may be waived by words or from an inference from a party's conduct."  Ixe Banco, S.A. v. MBNA Am. Bank, N.A., No. 07-CV-0432-LAP, 2008 WL 650403, at *8 (S.D.N.Y. Mar. 7, 2008).  But it is well-established that, under New York law, "a waiver, to be effectual . . . must be of some present existing right."  Estate of Anglin v. Estate of Kelley, 705 N.Y.S.2d 769, 772 (4th Dep't 2000)

---

[4]  Mr. Baroni argues that "even if the By-Laws are construed to strictly require delivery of a document, and even if the Court were to determine—contrary to the allegations of the PAC—that Mr. Baroni failed to deliver a document constituting a request," the Court should apply the substantial compliance doctrine here. (Pl. Mem. at 19-20). As stated above, the Court need not address this argument due to the timing of Mr. Baroni's request for indemnification.  In any event, the substantial compliance doctrine does not apply here because, "[u]nder New York law, the doctrine of substantial compliance is inapplicable to jurisdictional prerequisites for a waiver of sovereign immunity."  Privat Air, S.A. v. Port Auth. of New York & New Jersey, No. 05-CV-2213-DLI-RLM, 2007 WL 2089285, at *2 (E.D.N.Y. July 19, 2007).

(quoting People ex rel. Union Ins. Co. v. Nash, 111 N.Y. 310, 317 (1888)). In other words, a condition precedent cannot be waived before that condition becomes enforceable.

The Proposed Amended Complaint alleges that, after the general counsel of the Port Authority acknowledged receipt of Mr. Baroni's requests for "legal representation and indemnification" via email on February 18, 2014, the general counsel "[s]ubsequently . . . informed Mr. Baroni's attorney that Mr. Baroni had done everything he needed to do to make his request for payment of legal fees and indemnification, and that Mr. Baroni should stop reiterating his request for payment of his legal fees and indemnification." (PAC ¶¶ 22-23.) But, as discussed above, Mr. Baroni was not entitled to seek mandatory reimbursement for his legal fees at that time. (See supra at 11-12, 13). Because the Port Authority could not have enforced the condition precedent to Mr. Baroni's entitlement to seek mandatory reimbursement for his defense costs under the By-Laws at the time of the alleged waiver, the Port Authority could not have waived that condition, either. !

The Port Authority likewise cannot be estopped from arguing that Mr. Baroni did not comply with the requirements of the By-Laws. "[I]t is well settled that the Government may not be estopped on the same terms as any other litigant." Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc., 467 U.S. 51, 60 (1984). Instead, the Supreme Court has made clear that requiring litigants to "turn square corners when they deal with the Government" is necessary to ensure respect for "the conditions defined by [the legislature] for charging the public treasury." Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385 (1947); see also Off. of Pers. Mgmt. v. Richmond, 496 U.S. 414, 422 (1990) (emphasizing that the Supreme Court has "reversed every finding of estoppel [against the government] reviewed"). The Supreme Court has further blessed lower courts' "refusing to estop the Government" where, as here, a plaintiff relied to his

detriment on "possibly erroneous replies to . . . inquiries." Schweiker v. Hansen, 450 U.S. 785, 788 (1981). This logic applies with equal force to state entities like the Port Authority.[5] Lake v. New York City Employees' Ret. Sys., 163 N.Y.S.3d 143, 146 (2d Dep't 2022) ("[The] general rule [that] estoppel may not be invoked against a governmental body to prevent it from performing its statutory duty or from rectifying an administrative error . . . stems from considerations of sovereign immunity.") (citations and quotation marks omitted). Therefore, Plaintiff's allegation that the Port Authority's General Counsel told "Mr. Baroni's counsel that Mr. Baroni's repeated efforts to request indemnity were sufficient and that Mr. Baroni should stop making them" (Pl.'s Mem. at 21) does not provide a legitimate basis for the Court's departure from well-established principles governing estoppel against the government.

Fourth, Mr. Baroni's submission related to the State of New Jersey's decision to reimburse Ms. Kelly for her legal fees does not alter the Court's conclusion here. New Jersey exercised its discretion to pay Ms. Kelly's fees under a different indemnification provision, and that decision is not relevant to the question of whether Mr. Baroni has satisfied the mandatory statutory predicates for this Court to exercise subject matter jurisdiction to hear his claims.

---

[5] Mr. Baroni's citation to Henry Boekmann, Jr. & Assocs., Inc. v. Bd. of Educ., Hempstead Union Free Sch. Dist. No. 1, 616 N.Y.S.2d 395 (2d Dep't 1994), does not undermine the Court's conclusion here. While there was "a triable issue of fact . . . as to whether defendants should be estopped from asserting a defense founded upon the plaintiff's failure to file a notice of claim within the requisite three-month period," the statute of limitations in that case did not pose a jurisdictional bar. Id. at 397-98. In contrast, here, the condition precedent to the Port Authority's waiver of sovereign immunity is "mandatory and jurisdictional." Kyne, 147 F. Supp.2d at 218.

Simply put, the State of New Jersey's decision does not indicate that the Port Authority waived its sovereign immunity in this case.

In short, the Proposed Amended Complaint is insufficient to demonstrate that the Court has subject matter jurisdiction to hear Mr. Baroni's claim because it does not allege that Mr. Baroni delivered the judgment of acquittal within five days after Mr. Baroni received that document. As explained above, delivery of that document was a mandatory condition precedent to the accrual of his claim against the Port Authority. The Proposed Amended Complaint, consequently, does not demonstrate that the Port Authority has waived its sovereign immunity in this case. Because the Proposed Amended Complaint "could not withstand a motion to dismiss" under Rule 12(b)(1), granting Mr. Baroni leave to amend his complaint would be "futile." Lucente, 310 F.3d at 258.

## Conclusion

For the foregoing reasons, Mr. Baroni's motion to alter and for relief from the judgment and for leave to amend the complaint is denied. This Memorandum Order resolves Docket Entry no. 29.

SO ORDERED.

Dated: June 15, 2023
New York, New York

/s/ Laura Taylor Swain

LAURA TAYLOR SWAIN
Chief United States District Judge