**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILLIAM E. BARONI, JR.,<br><br>Plaintiff,<br><br>-v.-<br><br>THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY,<br><br>Defendant. | Case No. 21 Civ. 5961 (LTS) (JW)<br><br>ESI Plan and [Proposed] Order |

The parties in this action stipulate and agree that the following ESI Plan and [Proposed] Order shall govern the preservation, collection, and production of electronically stored information and documents in this action.

**(1) Description of Claims/Counterclaims/Cross-Claims:**

**Plaintiff:** Plaintiff William E. Baroni, Jr. alleges that, as a former Deputy Executive Director and thus an "indemnified party" under Article XI of the Port Authority's By-Laws, he is entitled to reimbursement of defense costs incurred by and on his behalf in connection with his successful defense in a federal criminal prosecution arising from the September 2013 George Washington Bridge lane realignment. Plaintiff alleges that the prosecution arose from acts and omissions undertaken while he was acting within the scope of his Port Authority employment or duties, including the exercise of his authority over Port Authority transportation operations. Plaintiff further alleges that the criminal charges were ultimately dismissed in full following appellate review, thereby triggering the Port Authority's mandatory obligation under Article XI to reimburse defense costs. Based on those allegations, Plaintiff asserts claims for indemnification, breach of contract, promissory estoppel, and deprivation of property without due process, and seeks reimbursement of defense costs, interest, fees, and related relief.

**Defendant:** Defendant, The Port Authority of New York and New Jersey, reserves all counterclaims available to it and, if this case proceeds, will file an answer, including any counterclaims, at the appropriate time.

**(a) Plaintiff's Estimated Monetary Damages and Description of Other Relief Sought:**

Plaintiff's current computation of damages is (i) reimbursement of legal fees, costs, and expenses incurred by or on behalf of Plaintiff in connection with the investigation and prosecution of the criminal charges against him, through the vacatur of his convictions and dismissal of the indictment, in an amount no less than $3,997,356.88; (ii) pre- and post-judgment interest on the foregoing, including interest at nine percent per annum under N.Y. C.P.L.R. § 5004 and post-judgment interest at the applicable rate under 28 U.S.C. § 1961; and (iii) attorneys' fees, costs, and expenses incurred by or on behalf of Plaintiff in pursuing reimbursement, including in this action, which continue to accrue and will be computed at the conclusion of this action.

**(b) Defendant's Estimated Damages on any Counterclaim/Cross-Claims and Description of Other Relief Sought:**

Not applicable at this time.

**By signing below, counsel for the parties confirm that they have factored in the potential damages and relief sought in this case, as well as the resources of the parties, to develop an ESI Plan that is proportional to the needs of this case.**

**(2) Meet and Confer.** Pursuant to Fed. R. Civ. P. 26(f), counsel are required to meet and confer regarding certain matters relating to electronic discovery before the Initial Pretrial Conference (the Rule 16 Conference). Counsel hereby certifies that they have met and conferred to discuss these issues.

**Date(s) of parties' meet-and-confer conference(s):** The parties met and conferred on June 29, 2026, and through the exchange of communications before and after that date.

**(3) Preservation.**

**(a) The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to the following scope and methods for preservation, including but not limited to: (e.g., retention of electronic data and implementation of a data preservation plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc.)**

The parties agree that if a requesting party provides written notice that it has good faith concerns about a producing party's scope or methods of preservation, the parties will meet and confer promptly at a mutually agreeable time, and if the parties

are unable to resolve any concerns or disputes after meeting and conferring in good faith, any party may present the dispute to the Court for resolution.

The parties agree that there is no need to modify or suspend the procedures used by a party in the ordinary course of business to back up data and systems for disaster recovery and similar purposes related to continuity of operations, and the parties are not required to take any such backup media out of the ordinary rotation. Subject to the foregoing sentence, the parties acknowledge that this ESI Plan does not, and is not intended to, curtail, displace, or otherwise modify the parties' obligations to preserve evidence under applicable law.

**(b) State the extent to which the parties have disclosed or have agreed to disclose the dates, contents, and/or recipients of "litigation hold" communications.**

The parties have not agreed to disclose the dates, contents, or recipients of their respective litigation-hold communications. Each party reserves all rights with respect to the disclosure of such communications, and nothing in this Plan requires the disclosure of information protected by the attorney-client privilege or work-product doctrine.

**(4) Collection.**

**(a) State the extent to which the parties have agreed on the scope of documents to be collected (e.g., custodians and files/folders, servers, databases) for search and review and agreement on methods of collection.**

The parties agree that they will meet and confer to attempt to reach agreement regarding reasonable and proportional custodians, search terms, and date ranges at a mutually agreeable time following service of responses and objections to their respective initial document requests, and if the parties are unable to resolve any concerns or disputes after meeting and conferring in good faith, any party may present the dispute to the Court for resolution.

With respect to any documents or ESI previously produced in connection with *United States of America v. William E. Baroni, Jr. and Bridget Anne Kelly*, Crim. No. 15-193 (SDW) (the "Criminal Action"); *Galicki et al. v. State of New Jersey et al.*, Civil Action No. 14-cv-00169 (D.N.J.); the New Jersey Legislative Select Committee investigation; or any other investigation or proceeding concerning Bridgegate,[1] the parties shall meet and confer regarding the re-production of such documents in this action to reduce duplicative collection and review costs. Nothing

[1]"Bridgegate" means the actions taken by Port Authority employees and others to (i) realign the traffic pattern from Fort Lee, New Jersey to the upper level toll plaza of the George Washington Bridge between September 9, 2013 and September 13, 2013, and (ii) respond to inquiries regarding that realignment.

herein requires a party to re-produce documents that are not responsive to the other party's document requests or that are subject to a claim of privilege or other protection.

(b) **Source(s) of Electronically Stored Information. The parties anticipate that discovery may occur from one or more of the following potential source(s) of electronically stored information:**

**Plaintiff and Defendant:**

The parties anticipate that discovery may occur from one or more of the following sources of electronically stored information: email; word-processing documents; cloud-based storage such as Google Drive, OneDrive, and similar services; spreadsheets; presentations; databases and structured data; instant messages and chat or messaging platforms; and hard-copy documents collected from physical files.

(c) **Custodians/Databases. The parties have agreed that data will be collected from the following custodians/databases for review:**

**Plaintiff and Defendant:**

As set forth in Section (4)(a) above, the parties will meet and confer to attempt to reach agreement on custodians and databases and, if necessary, will seek judicial resolution of any dispute.

**(5) Search and Review.**

(a) **The parties have discussed methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. (Some of the approaches that may be considered include: the use and exchange of keyword search lists, "hit reports," and/or responsiveness rates; concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations on whether back-up, archival, legacy, or deleted electronically stored information will be searched; testing; sampling; etc.) To the extent the parties have reached agreement as to search and review methods, provide details below:**

As set forth in Section (4)(a) above, the parties will meet and confer to attempt to reach agreement regarding reasonable and proportional search terms, date ranges, and other search and review methodologies, and, if necessary, will seek judicial resolution of any dispute.

To the extent a party chooses to use technology-assisted review ("TAR") or other technology or methodology to assist in the review and production of documents, if the party intends to use that technology to independently exclude documents from its review or make determinations about what documents are or are not to be produced, that party shall disclose the name of the tool it intends to use and the intended methodology for performing those functions. No such disclosure is required for a use of technology that merely assists or guides human performance of those functions. If the requesting party provides written notice that it has concerns regarding the producing party's disclosed use of TAR or another technology or methodology, the parties will meet and confer promptly at a mutually agreeable time and, if they are unable to resolve any concerns or disputes after meeting and conferring in good faith, any party may submit the dispute to the Court for resolution.

**(6) Production.**

**(a) Limitations on Production. The parties have discussed factors relating to the scope of production, including but not limited to: (i) number of custodians; (ii) date ranges for which potentially relevant data will be drawn; (iii) timing of productions (including phased discovery or rolling productions); (iv) prioritization of review; and (vi) electronically stored information in the custody or control of non-parties. To the extent the parties have reached agreements related to any of these factors, describe below:**

Production of responsive, non-privileged documents may proceed on a rolling basis and be completed by November 6, 2026, as set out in Section 6(d) of the Case Management Plan (ECF No. 61). The parties may meet and confer to discuss whether certain categories of information can be prioritized over other categories.

If, after reviewing ESI and documents received from the producing party, the requesting party provides written notice that it believes additional searches may be necessary, the parties will meet and confer promptly at a mutually agreeable time and, if the parties are unable to resolve any concerns or disputes after meeting and conferring in good faith, any party may submit the dispute to the Court for resolution.

**(b) Form(s) of Production and Metadata to be produced:**

**(1) The parties have reached the following agreements regarding the form(s) of production and metadata fields to be produced:**

**Plaintiff and Defendant:**

The parties shall make reasonable efforts to comply with the production specifications in this Section 6(b). Except as otherwise provided in this ESI Plan, the producing party shall produce ESI as black and white, single-page Group IV standard TIFF images (if possible, not less than 300 dpi resolution) with full-text extraction and Concordance load files. If there is no extractable text, the producing party shall perform optical character recognition ("OCR") on the document and provide the associated text file. OCR shall not be performed on a document from which full-text extraction is available, unless such document is redacted. All text files should be produced as document-level text files with a path to the text file included in the Concordance load file; extracted text/OCR should not be embedded in the load file itself. TIFF files shall be named with a unique production number followed by the appropriate file extension. Each image shall contain a footer with a sequentially ascending production number. Hard copy documents shall be scanned and produced in the same format as above, unless the volume or format of the hard copy documents are such that they can be produced only through a physical inspection. All documents shall be produced as they are maintained in the ordinary course.

TIFF or PDF images shall show all text and images that would be visible to the reader using the native software that created the document; for example, images of email messages shall include the BCC line. Presentation slides shall be processed with hidden slides and all speaker notes unhidden and shall show both the slide and the speaker's notes. All other documents shall be processed to show readily available hidden content, tracked changes or edits, comments, notes, and other similar information viewable in the native file or image. Each image shall be assigned a unique and sequential Bates number in the lower right-hand corner, and each native file shall also be assigned a unique Bates number. The parent-child relationship between attachments, enclosures, embedded files, and exhibits shall be preserved in production, with the child document produced consecutively immediately after the parent document.

**METADATA TABLE**

*Fields and Metadata to Be Produced To the Extent Possible*

| Field | Data Type | Paper | Loose & Email | Native Files & Attachments |
|---|---|---|---|---|
| BegDoc | TEXT | Start Bates | Start Bates | Start Bates |
| EndDoc | TEXT | End Bates | End Bates | End Bates |
| BegAttach | TEXT | Starting Bates number of document family | Starting Bates number of document family | Starting Bates number of document family |
| EndAttach | TEXT | Ending Bates number of document family | Ending Bates number of document family | Ending Bates number of document family |
| Custodian | TEXT – single entry | Custodian of the document | Custodian of the document | Custodian of the document |
| ALL/Duplicate Custodian | TEXT – multi entry | Other custodians whose files contained a particular document that was eliminated through deduplication | Other custodians whose files contained a particular document that was eliminated through deduplication | Other custodians whose files contained a particular document that was eliminated through deduplication |
| File Path | TEXT | | File path where original file was collected from | Folder where email was collected from. Includes folder locations within email container files such as PST and NSF |
| From | TEXT | | | Sender of message |
| To | TEXT – separate entries with “;” | | | Recipients of message |
| Cc | TEXT – separate entries with “;” | | | Copied recipients |
| BCC | TEXT – separate entries with “;” | | | Blind copied recipients |
| Subject | TEXT or MEMO if over 255 characters | | | Subject of message |
| Date Sent | Date (MM-DD-YYYY) – e.g. 03-03-2012 | | | Date message sent |
| Time Sent | TEXT (hh:mm:ss) | | | Time message sent |
| Date Received | Date (MM-DD-YYYY) | | | Date message received |
| Time Received | TEXT (hh:mm:ss) | | | Time message received |
| Document Type | TEXT | | Identifies document type as a loose e-file | Identifies document type as an email or attachment to an email |

| Field | Data Type | Paper | Loose & Email | Native Files & Attachments |
|---|---|---|---|---|
| File Name | TEXT | | Name of original file | Name of original file |
| File Extension | TEXT | | Extension of original file | Extension of original file |
| File Size | Number | | File size in bytes | |
| Date Created | Date (MM-DD-YYYY) – e.g. 03-03-2012 | | Date file was created | |
| Date Modified | Date (MM-DD-YYYY) – e.g. 03-03-2012 | | Date file was last modified | |
| Last Modified By | TEXT | | Individual who last modified file | |
| Track Changes | TEXT | | Indicates whether file contains tracked changes (yes) | Indicates whether file contains tracked changes (yes) |
| Title | TEXT or MEMO if over 255 characters | | Title from document metadata | |
| Author | TEXT | | Document author from metadata | |
| Hash | TEXT | | MD5/SHA1 Hash Value | MD5/SHA1 Hash Value |
| Text File Link | TXT files should be named the same as the BegDoc and delivered in the same folder as the images or in a folder labeled Text (e.g. AB00000001.txt) | Relative path to OCR or extracted text file | Relative path to OCR or extracted text file | Relative path to OCR or extracted text file |
| Native File Link | Should be named the same as the BegDoc and delivered in the same folder as the images or in a folder labeled Natives | | Relative path to native | Relative path to native |
| Redaction | TEXT | Redacted (yes) | Redacted (yes) | Redaction (yes) |
| Redaction Type | TEXT | Redaction Reason(s) | Redaction Reason(s) | Redaction Reason(s) |
| Confidentiality | TEXT | Confidential Status of Document | Confidential Status of Document | Confidential Status of Document |

**(2) Please specify any exceptions to the form(s) of production indicated above (e.g., word processing documents in TIFF with load files, but spreadsheets in native form):**

To the extent possible, spreadsheets, including Microsoft Excel (file extensions such as .xls and .xlsx), desktop database files including Microsoft Access (file extensions such as .mdb), and multimedia files including audio and video (e.g., .wav, .mpeg, .avi) collected for this case shall be produced in native format. For each native file produced, the production will include a TIFF image slipsheet indicating the Bates number of the native file and any confidentiality designation, and stating "Document Produced in Native." The parties agree that if a spreadsheet, desktop database file, or multimedia file, which would ordinarily be produced in native format, contains material that the producing party claims should be withheld on the basis of attorney-client privilege, work product, or any other claim of privilege or immunity from discovery, that document may be withheld in full in the first instance and identified in the producing party's privilege log. For each native file withheld in this manner, the production will include a TIFF image slipsheet indicating the Bates number of the native file and any confidentiality designation, and stating "Native Document Withheld for Privilege." The receiving party may request a meet and confer regarding any withheld spreadsheet, desktop database file, or multimedia file to discuss whether redaction of that document in lieu of withholding would be proportional to the needs of the litigation. If the parties are unable to resolve any concerns or disputes after meeting and conferring in good faith, any party may submit the dispute to the Court for resolution.

**(3) Methods to expedite review. The parties have discussed and agree to the following (e.g., de-duplication, email threading, etc.):**

De-duplication: The parties shall make reasonable efforts to de-duplicate ESI. De-duplication will be done globally, with an "All Custodian" field populated to reflect all custodians who had possession of the document. All ESI will be de-duplicated using commercially acceptable e-discovery software that utilizes either MD5 or SHA1 cryptographic hash values, or another agreed-to de-duplication method, and all files bearing an identical hash value are considered duplicates. For purposes of this paragraph, only email messages in which the parent document and all attachments are exactly the same will be considered duplicates.

Email Threading: A party may utilize email threading to produce only the most comprehensive or inclusive email in the string, along with all attachments to emails in the string. Where a prior email in a thread contains a unique attachment, that email and attachment is not a lesser-inclusive email and shall be produced. Duplicated emails and attachments not produced under this paragraph need not be reflected on the party's privilege log, provided the most comprehensive email and all attachments are produced.

**(4) Privileged Material.**

**(a) Identification. The parties have agreed to the following method(s) for the identification (e.g., form of logs, acceptability of categorical logs for certain categories of communications, production of metadata log in lieu of or in advance of more limited document by document log, categories of documents that need not be logged, disclosure of number of documents withheld pursuant to certain privileges in lieu of document by document log), and the redaction of privileged documents:**

As set out in Section 7 of the Case Management Plan, each party shall serve its privilege log no later than December 9, 2026. All privilege logs will be produced in Microsoft Excel format.

A producing party shall identify on a privilege log any responsive document that the producing party withholds in full on the basis of a claim of attorney-client privilege, work product, or any other claim of privilege or immunity from discovery. Where email threading is employed, lesser inclusive emails suppressed from any review need not be reflected on the privilege log, so long as the log entry sufficiently identifies all participants in each communication in the email thread.

Communications may be identified on a privilege log by category, rather than individually. The parties agree to meet and confer regarding appropriate data fields, categories, and descriptions for categorical logging by no later than November 6, 2026. If the parties are unable to resolve any concerns or disputes after meeting and conferring in good faith, any party may present the dispute to the Court for resolution.

Notwithstanding the foregoing, if the requesting party has a reasonable belief that a categorical log provides insufficient information to assess the asserted privilege(s) for any particular document or category of documents, the receiving party may provide written notice requesting that the producing

party provide a document-by-document privilege log for that document or category of documents. Within fourteen (14) days of such a request, or at a mutually agreed upon time, the producing party shall either provide a document-by-document log for the identified document(s) or meet and confer with the receiving party regarding the request, and if the parties cannot resolve the dispute, either party may seek relief from the Court.

Where a producing party withholds a portion of a document that contains privileged or other protected information, the producing party shall redact that portion in a conspicuous manner that places the word "REDACTED" in the area of the document where the redaction occurred. To the extent a document is redacted, OCR text files for that document shall not contain text for the redacted portions, and the original unredacted native file shall be preserved pending the conclusion of this action. If the requesting party has a reasonable belief that the unredacted portion of a document is not sufficient to allow the requesting party to assess the asserted privilege(s), the requesting party may provide written notice of the same, and the producing party will identify the redacted document in its privilege log in the same manner as a document withheld in full within 7 days of the written notice, or at a mutually agreed upon time.

**(b) Inadvertent Production / Claw-Back Agreements. Pursuant to Fed R. Civ. P. 26(b)(5) and F.R.E. 502(e), the parties have agreed to the following concerning the inadvertent production of privileged documents (e.g. "quick-peek" agreements, on-site examinations, non-waiver agreements or orders pursuant to F.R.E. 502(d), etc.) (the parties are referred to the Rule 502 order in Judge Willis's form confidentiality order):**

The parties intend to be governed by an order pursuant to Federal Rule of Evidence 502(d), as referenced in the Rule 502 order in Judge Willis's form confidentiality order. The production of ESI shall not constitute a waiver of the attorney-client privilege or work-product protection if the disclosure was inadvertent, and the party making the claim of privilege or protection shall promptly take reasonable steps to recover the ESI. The production of documents and things, including ESI, is subject to the parties' rights under the Protective Order to be entered in this action and the rules and practices of the Court governing the return of inadvertently produced documents and things.

**(c) The parties have discussed a 502(d) Order. Yes ☒ ; No ☐**

**The provisions of any such proposed Order shall be set forth in a separate document and presented to the Court for its consideration.**

**(5) Cost of Production. The parties have analyzed their client's data repositories and have estimated the costs associated with the production of electronically stored information. The factors and components underlying these costs are estimated as follows:**

**(a) Costs.**

**Plaintiff and Defendant:**

Each party shall bear its own costs of producing relevant hard-copy documents and ESI in its possession, custody, or control, except as the Court orders.

**(b) Cost Allocation. The parties have considered cost-shifting or cost-sharing and have reached the following agreements, if any:**

Each party shall bear its own costs of producing relevant hard-copy documents and ESI in its possession or control, except as the Court orders. The parties have not agreed to any cost-shifting or cost-sharing at this time and reserve all rights to seek cost-shifting or cost-sharing under applicable law.

**(c) Cost Savings. The parties have considered cost-saving measures, such as the use of a common electronic discovery vendor or a shared document repository, and have reached the following agreements, if any:**

The parties have agreed to employ the de-duplication and email-threading measures described in Section (6)(b)(3) above to reduce the volume of ESI processed, reviewed, and produced, and to exclude from processing common system and "garbage" files and container files from which ESI was extracted. The parties will continue to confer in good faith regarding additional cost-saving measures as discovery proceeds.

**The preceding constitutes the agreement(s) reached between the parties to certain matters concerning electronic discovery as of this date. Counsel certify that in connection with preparation of this ESI Plan and [Proposed] Order they are sufficiently knowledgeable in matters relating to their clients' technological systems to discuss competently issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.**

Respectfully submitted this 30th day of June 2026.

ATTORNEYS FOR PLAINTIFF:

SIDLEY AUSTIN LLP

By: _/s/ Michael A. Levy_

Michael A. Levy
Michael D. Mann
Danica L. Muir
Alyssa M. Hasbrouck
Norman M. Hobbie, Jr.

787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-7341

mlevy@sidley.com
mdmann@sidley.com
danica.muir@sidley.com
ahasbrouck@sidley.com
nhobbie@sidley.com

Christopher M. Egleson
1001 Page Mill Road
Building 1
Palo Alto, California 94304
(650) 565-7000
cegleson@sidley.com

*Counsel for Plaintiff*
*William E. Baroni, Jr.*

ATTORNEYS FOR DEFENDANT:

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _/s/ Richard A. Jacobsen_

Richard A. Jacobsen
rjacobsen@orrick.com
Daniel A. Rubens
drubens@orrick.com

51 West 52nd Street
New York, NY 10019-6142
Tel. +1 212 506 5000

*Attorneys for Defendant*
*The Port Authority of New York and New Jersey*

Dated: ________________, 2026

SO ORDERED:

________________________________
Jennifer E. Willis
United States Magistrate Judge